THE STATE OF OHIO, APPELLEE, *v*. DAVIS, APPELLANT.

[Cite as *State v. Davis,* 131 Ohio St.3d 1, 2011-Ohio-5028.]

*Criminal law—Death penalty—Jurisdiction—Motion for a new trial—Pursuant to Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution, a court of appeals has jurisdiction in a case in which a death penalty has been imposed to consider the appeal of a trial court's denial of a motion for a new trial based on newly discovered evidence—A trial court has jurisdiction to decide a motion for a new trial based on newly discovered evidence in a case in which the imposition of the death penalty has been affirmed on appeal.*

(No. 2009-2028—Submitted June 8, 2011—Decided October 4, 2011.)

APPEAL from the Court of Appeals for Licking County, No. 09-CA-00019, 2009-Ohio-5175.

_____

SYLLABUS OF THE COURT

1.   Pursuant to Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution, a court of appeals has jurisdiction in a case in which a death penalty has been imposed to consider the appeal of a trial court's denial of a motion for a new trial based on newly discovered evidence.

2.  A trial court has jurisdiction to decide a motion for a new trial based on newly discovered evidence in a case in which the imposition of the death penalty has been affirmed on appeal.

_____

LANZINGER, J.

{¶ 1}  This appeal by defendant-appellant, Roland Davis, involves a capital case in which we are asked to determine two jurisdictional issues: (1)

whether a court of appeals has jurisdiction to consider an appeal of a trial court's order denying a motion for a new trial in a death-penalty case and (2) whether a trial court has jurisdiction to consider a motion for a new trial[1] based on newly discovered evidence in light of *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas* (1978), 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162. We hold that the trial court would have had jurisdiction over Davis's motion for a new trial based on newly discovered evidence and that the appellate court had jurisdiction to entertain the appeal of the denial of the motion for a new trial. Accordingly, we reverse the judgment of the appellate court, and we remand this case to the court of appeals.

## I. Factual Background

{¶ 2} A jury convicted Roland Davis of aggravated murder, murder, kidnapping, aggravated burglary, and aggravated robbery in 2005 in connection with the murder of 86-year-old Elizabeth Sheeler in her Newark, Ohio apartment, despite Davis's contention that the perpetrator was his brother. Davis was sentenced to death, and this court affirmed his convictions and death sentence. *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31.

{¶ 3} On January 14, 2008, the trial court dismissed Davis's petition for postconviction relief without an evidentiary hearing. The court of appeals affirmed the trial court's judgment. 5th Dist. No. 2008-CA-16, 2008-Ohio-6841. We declined jurisdiction over his appeal. 122 Ohio St.3d 1409, 2009-Ohio-2751, 907 N.E.2d 1193.

{¶ 4} On October 31, 2008, Davis filed a motion for leave to file a motion for a new trial based upon newly discovered evidence. Davis alleged that

---

1. Davis's motion was actually titled "Motion For Finding Defendant Was Unavoidably Prevented From Discovering New Evidence Within 120 Days Of Verdict Under Ohio R.Crim. P. 33(B)." Under Crim.R. 33, the defendant must file this type of motion to gain the court's approval for filing the motion for a new trial when more than 120 days have passed since the verdict was handed down. We will, however, proceed to refer to defendant's motion as a motion for a new trial throughout the bulk of the opinion.

he was unavoidably prevented from discovering and producing the evidence at trial or within 120 days of the verdict, as set forth in Crim.R. 33(B).

{¶ 5} The newly discovered evidence was the affidavit of a DNA expert, Dr. Laurence Mueller, a professor in the Ecology and Evolutionary Biology Department at the University of California, Irvine. Mueller stated that he had reviewed the state's DNA reports and tests, the testimony of the state's DNA experts, and other DNA evidence in the Davis case. In his affidavit, Mueller concluded "with a reasonable degree of scientific certainty that the DNA evidence recited in these reports and the testimony presented" at trial was questionable for four reasons: (1) the state's DNA experts failed to account for the database "hit"[2] in the statistical analysis of the DNA test results, (2) there is no mention of laboratory error as a source of uncertainty in DNA profiling, (3) Meghan Clement, one of the state's DNA experts, incorrectly testified that it was impossible for nonidentical twins to have the same DNA, and (4) the state's experts overstated the value of the DNA evidence found on the bed sheets in the victim's bedroom.

{¶ 6} In his motion for a new trial, Davis argued that Mueller's affidavit undermined the state's DNA evidence, which was essential to its case against him. Davis argued that the affidavit demonstrated that trial counsel were ineffective by failing to mount an effective challenge to the state's DNA evidence. Davis also asserted that based on this new evidence, he "may be actually innocent of this capital offense."

{¶ 7} The trial court denied Davis's motion. The court found that Davis's claim of ineffective assistance of counsel did not demonstrate that he was unavoidably prevented from procuring Dr. Mueller's testimony within 120 days after the trial. The trial court also found that Davis failed to demonstrate that "but

---

2. The "hit" is a statistic that scientists must account for in performing the database search.

for trial error—the unavailability of Dr. Mueller's testimony—no reasonable factfinder would have found him guilty." The court stated, "Nothing in Dr. Mueller's testimony suggests that Roland Davis can be conclusively excluded as the source of the DNA evidence. Neither does Dr. Mueller's affidavit suggest that the DNA conclusively matches that of defendant's brother."

{¶ 8} On appeal, the Court of Appeals for the Fifth District held that the trial court did not err because the trial court lacked jurisdiction to act on a motion for a new trial. The court relied upon *Special Prosecutors*, 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162, in holding that "the trial court's granting of Appellant's motion for new trial would be inconsistent with the judgment of the Ohio Supreme Court, affirming Appellant's convictions and sentence." *State v. Davis,* 5th Dist. No. 09-CA-0019, 2009-Ohio-5175, ¶ 12.

{¶ 9} We accepted Davis's discretionary appeal on January 27, 2010, on one of two propositions of law presented: "When the issue to be decided by the trial court does not fall within the judgment on appeal, the trial court retains jurisdiction to decide the motion before it. Further, to meet due process, a trial court must be able to consider a motion for a new trial based on newly discovered evidence even after an appeal has been taken. U.S. Const. amend. XIV."

{¶ 10} We later ordered the parties to address "[w]hether the court of appeals had jurisdiction to consider the trial court's denial of Davis' motion for new trial based on newly discovered evidence under Section 2(B)(2)(c) and Section 3(B)(2), Article IV of the Ohio Constitution." 127 Ohio St.3d 1483, 2010-Ohio-6371, 939 N.E.2d 182.

## II. Analysis

### A. The Court of Appeals' Jurisdiction

{¶ 11} We will first address the question on which we ordered briefing, that is, whether the court of appeals had jurisdiction to consider Davis's appeal of the trial court's denial of his motion for a new trial in his death-penalty case.

Subject-matter jurisdiction cannot be waived and is properly raised by this court sua sponte. *State v. Lomax,* 96 Ohio St.3d 318, 2002-Ohio-4453, 774 N.E.2d 249, ¶ 17.

{¶ 12} On November 8, 1994, Ohio voters approved an amendment to the Ohio Constitution to provide this court with direct appellate review of death-penalty cases. Section 2(B)(2)(c), Article IV, Ohio Constitution. Before the amendment, the Ohio Constitution granted jurisdiction to courts of appeals over appeals from a death sentence. Capital defendants were entitled to file an appeal as of right first to the court of appeals and then to file a second appeal as of right to the Ohio Supreme Court. The amendment eliminated direct review by the courts of appeals for all defendants sentenced to death for a crime that occurred on or after January 1, 1995. Section 3(B)(2), Article IV, Ohio Constitution.

{¶ 13} Section 2(B)(2)(c), Article IV of the Ohio Constitution provides: "The supreme court shall have appellate jurisdiction as follows: * * * In direct appeals from the courts of common pleas or other courts of record inferior to the court of appeals as a matter of right *in cases* in which the death penalty has been imposed." (Emphasis added.) Section 3(B)(2), Article IV of the Ohio Constitution, however, provides: "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district, except that courts of appeals *shall not have jurisdiction to review on direct appeal a judgment* that imposes a sentence of death." (Emphasis added.)

{¶ 14} The General Assembly then amended R.C. 2953.02 to provide: "In a capital case in which a sentence of death is imposed for an offense committed on or after January 1, 1995, *the judgment or final order* may be appealed from the trial court directly to the supreme court as a matter of right." (Emphasis added.)

{¶ 15} The foregoing language limits the jurisdiction of the Supreme Court to the appeal of a judgment sentencing a defendant to death.

{¶ 16} We upheld the constitutionality of the amendments changing appellate review of death-penalty cases in *State v. Smith* (1997), 80 Ohio St.3d 89, 104, 684 N.E.2d 668: "[T]he plain language of the amendments speaks of 'cases in which the death penalty has been imposed' and 'judgment that imposes the sentence of death.' * * * Section 2(B)(2)(c), Article IV and Section 3(B)(2), Article IV, Ohio Constitution. Thus the Supreme Court has jurisdiction over the whole case, instead of counts, charges, or sentences." (Emphasis deleted.) We did not, however, address postconviction motions in that opinion. We must now determine whether the constitutional requirement that we review all direct appeals of cases in which the death penalty was imposed includes review of appeals from a trial court's order denying a defendant's motion for a new trial.

{¶ 17} Davis argues that the wording of the amendments is critical. According to him, the court of appeals lost jurisdiction over only those appeals taken from the judgment that imposed a sentence of death. He asserts that the court of appeals has jurisdiction to consider appeals from all other postjudgment motions.. Accordingly, Davis contends that the court of appeals properly ruled on his appeal from the trial court's judgment denying his motion for a new trial.

{¶ 18} The state points out that Davis fails to address the language of Section 2(B)(2)(c), Article IV of the Ohio Constitution in his argument. The state argues that every judgment in a case in which the death penalty was imposed must be appealed directly to the Supreme Court of Ohio. In support of this argument, the state asserts that Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution should be read in pari materia. See *State ex rel. Toledo v. Lucas Cty. Bd. of Elections* (2002), 95 Ohio St.3d 73, 78, 765 N.E.2d 854, quoting *Toledo Edison Co. v. Bryan* (2000), 90 Ohio St.3d 288, 292, 737 N.E.2d 529 (" 'Where provisions of the Constitution address the same subject matter, they must be read *in pari materia* and harmonized if possible' "). Thus, the state argues, if the two sections appear to be ambiguous when read together, this court must "make every

effort to resolve this dilemma in a way that will preserve the amendment[s], and give [them] that effect which [it] conclude[s] was the desire of the electorate at the time of its adoption." *State ex rel. Rhodes v. Brown* (1973), 34 Ohio St.2d 101, 103, 63 O.O.2d 189, 296 N.E.2d 538.

{¶ 19} The purpose of Sections 2(B)(2)(c) and 3(B)(2), Article IV, Ohio Constitution, was to alleviate the general public's dissatisfaction with the delays in enforcing the death penalty by eliminating the intermediate appellate review of those cases. See *Smith*, 80 Ohio St.3d at 100, 684 N.E.2d 668. However, as we noted in *Smith*, "the state has taken other steps to expedite the resolution of criminal cases, including capital cases, such as limiting the time within which to file postconviction petitions." Id.

{¶ 20} Courts of appeals have routinely ruled on appeals of judgments denying motions for new trials in cases in which a defendant was convicted of a murder that occurred after July 1, 1995, and in which a death penalty was imposed. *State v. Stojetz,* 12th Dist. No. CA2002-04-006, 2002-Ohio-6520; *State v. Lindsey,* 12th Dist. No. CA2003-07-010, 2004-Ohio-4407; *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221; *State v. Bethel,* 10th Dist. No. 09AP-924, 2010-Ohio-3837.

{¶ 21} The Trumbull County Court of Appeals appears to have been the only court to address the jurisdictional issue in the context of a motion for a new trial in a capital case. *State v. Jackson* (May 13, 2010), 11th Dist. No. 2009-T-0050. In *Jackson,* the state filed a motion to dismiss, arguing that the court of appeals did not have the authority to entertain the appeal because a decision denying a new trial in a death-penalty case can be appealed only to the Supreme Court. The court of appeals ruled on the motion before conducting oral argument. The court concluded: "[Section 3(B)(2), Article IV, Ohio Constitution] refers expressly to a specific judgment that a court of appeals does not have the authority to review; i.e., the final sentencing judgment which sets forth the order

regarding the imposition of the death penalty. Given the narrowness of the jurisdictional exception in Section 3(B)(2), logic dictates that the provision was not intended to totally deprive a court of appeals of all authority to review a final judgment stemming from a case in which the death penalty was imposed. Rather the wording of Section 3(B)(2) supports the conclusion that an appellate court has the jurisdiction to review final judgments rendered in such a proceeding, except for the entry containing the weighing exercise which leads to the imposition of the 'death' sentence." *Jackson* at 4.

{¶ 22} We agree. A holding that the Supreme Court has exclusive jurisdiction over *all matters* relating to a death-penalty case would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of future cases, a scenario that the voters expressly rejected in passing the constitutional amendments.[3] We see no reason why the courts of appeals may not currently entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed. We now hold that pursuant to Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution, a court of appeals has jurisdiction to consider a trial court's denial of a motion for leave to file a motion for a new trial based on newly discovered evidence in a case in which the death penalty was previously imposed.

**B. The Trial Court's Jurisdiction over the Motion for a New Trial**

{¶ 23} Having resolved the issue of the court of appeals' jurisdiction over Davis's motion for a new trial, we now turn to the issue of the trial court's jurisdiction. As stated earlier, the Court of Appeals for the Fifth District, citing *Special Prosecutors*, 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162, held that the trial court lacked jurisdiction to act on Davis's motion for a new trial.

---

3. We do note, however, that there have been cases in which this court has treated a capital defendant's appeal of the noncapital aspects of his case as an appeal as of right. See, e.g., *State v. Elmore,* 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, and *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9.

**{¶ 24}** Crim.R. 33(B) sets forth the grounds on which the trial court may grant a motion for a new trial. The rule states:

**{¶ 25}** "Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

**{¶ 26}** "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."

**{¶ 27}** Crim.R. 33 does not otherwise limit the time for filing a motion for a new trial based on newly discovered evidence. The court of appeals in this case, relying on *Special Prosecutors*, held that the trial court did not have jurisdiction to entertain Davis's motion for a new trial after his conviction had been affirmed on appeal. 2009-Ohio-5175 at ¶ 12.

**{¶ 28}** In *Special Prosecutors,* 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162, the trial court granted a defendant's motion to withdraw a guilty plea after a conviction and sentence based on the plea had been affirmed on appeal. After a trial date had been set, we granted a writ of prohibition to prevent the trial from proceeding. This court stated, "[T]he trial court's granting of the motion to

withdraw the guilty plea and the order to proceed with a new trial were inconsistent with the judgment of the Court of Appeals affirming the trial court's conviction premised upon the guilty plea. The judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment. Accordingly, we find that the trial court lost its jurisdiction when the appeal was taken, and, absent a remand, it did not regain jurisdiction subsequent to the Court of Appeals' decision." Id. at 97.

{¶ 29} We addressed a similar issue in *State ex rel. Cordray v. Marshall,* 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633. In that case, the defendant claimed in his appeal of a conviction for murder that the trial court had erred by failing to instruct the jury on a lesser included offense. The court of appeals rejected this claim and affirmed his conviction. Id. at ¶ 3. Several years later, the defendant filed a motion for relief from judgment and raised the same claims that had been rejected in his appeal. Citing the law-of-the-case doctrine, we held that the trial court did not have jurisdiction to grant a posttrial motion that raised the same issues that had previously been rejected on appeal. Id. at ¶ 27-28, 42.

{¶ 30} The law-of-the-case doctrine holds that "the decision of a reviewing court in a case remains the law of that case *on the legal questions involved* for all subsequent proceedings in the case at both the trial and reviewing levels." (Emphasis added.) *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. This doctrine prevents a litigant from relying on arguments at retrial that were fully litigated, or could have been fully litigated, in a first appeal. See *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404-405, 659 N.E.2d 781.

{¶ 31} Davis argues that under this doctrine, the trial court should have been permitted to rule on his motion for a new trial based on newly discovered evidence because a reviewing court had never considered Dr. Mueller's affidavit

during previous appeals. Davis asserts that there would not have been a conflict between the trial court's exercise of jurisdiction over the motion for a new trial and the appellate courts' affirmances of his conviction and of the denial of postconviction relief because the issue to be decided was not "within the compass" of the appellate courts' judgments. See *Special Prosecutors,* 55 Ohio St.2d at 97, 9 O.O.3d 88, 378 N.E.2d 162.

{¶ 32} Several Ohio courts of appeals have permitted trial courts to consider motions for a new trial based on newly discovered evidence after judgments of conviction had been affirmed on appeal. See *State v. Gaines,* 1st Dist. No. C-090097, 2010-Ohio-895, ¶ 36 (the trial court abused its discretion in deciding defendant's new-trial motion without an evidentiary hearing); *State v. Rossi,* 2d Dist. No. 23682, 2010-Ohio-4534 (due process requires that a motion for a new trial based on newly discovered evidence must, at some point, be considered on the merits); and *State v. Franklin*, 7th Dist. No. 09 MA 96, 2010-Ohio-4317 (*Special Prosecutors* does not provide grounds for denying motion for a new trial based on newly discovered evidence).

{¶ 33} In his motion, Davis argued that his counsel were ineffective for failing to present a DNA expert at trial to refute the testimony of the state's expert witness. The state points out that Davis raised the same issue on direct appeal when he claimed that his counsel were ineffective by stipulating to evidence establishing the admissibility of DNA evidence. See *Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 344.

{¶ 34} Contrary to the state's argument, the earlier claim is not related to Davis's present claim that newly discovered evidence (Mueller's affidavit) warrants a new trial. Indeed, this issue could not have been raised on direct appeal and decided by this court, because it rests upon evidence not considered by the trial court—an affidavit by a qualified DNA expert. A reviewing court on direct appeal could not have considered an affidavit that was not part of the

record. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 406, 8 O.O.3d 405, 377 N.E.2d 500 (a reviewing court is limited to the record made of the proceedings in the trial court).

**{¶ 35}** The state also claims that *Special Prosecutors* is only a conditional bar on the trial court's jurisdiction to consider Davis's motion for a new trial, for we held there that "the trial court lost its jurisdiction when the appeal was taken, and, *absent a remand*, it did not regain jurisdiction subsequent to the Court of Appeals' decision." (Emphasis added.) 55 Ohio St.2d at 97, 9 O.O.3d 88, 378 N.E.2d 162. Thus, the state argues that Davis has a remedy by filing a motion with *this c*ourt showing that his motion for a new trial has merit and then seeking a remand of his case to the trial court, which would then consider the new-trial motion. The state maintains that this court is in the best position to determine what issues were addressed in its previous judgment.

**{¶ 36}** The state's suggested remedy is cumbersome. The trial court is better equipped than this court is to consider testimony and other evidence matters alleged to be newly discovered. The trial court is also capable of deciding whether Dr. Mueller's affidavit involved matters "within the compass" of this court's previous decisions.

**{¶ 37}** We did not decide *Special Prosecutors* based on the law-of-the-case doctrine. However, that doctrine would not prevent the trial court from considering the effect of previous decisions on Davis's newly-discovered-evidence claim. We take this opportunity to specify that the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure. These motions provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences. The trial court acts as the gatekeeper for these motions and, using its discretion, can limit the litigation to viable claims only. In light of the foregoing, we hold that a trial court retains jurisdiction to decide a motion for

a new trial based on newly discovered evidence when the specific issue has not been decided upon direct appeal.

### III. Conclusion

{¶ 38} We hold that pursuant to Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution, a court of appeals has jurisdiction in a case in which a death penalty has been imposed to consider the trial court's denial of a motion for a new trial based on newly discovered evidence.

{¶ 39} We also hold that a trial court has jurisdiction to decide a motion for a new trial based on newly discovered evidence in a case in which the imposition of the death penalty has been affirmed on appeal.

{¶ 40} Because the court of appeals misapplied the holding of *Special Prosecutors* in concluding that the trial court did not have jurisdiction to consider Davis's motion for a new trial based on his claim of newly discovered evidence, we remand this case to the court of appeals to reconsider the trial court's ruling in accordance with this holding.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

_____

Kenneth W. Oswalt, Licking County Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick and Randall L. Porter, Assistant Public Defenders, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin and Cullen Sweeney, Assistant Public Defenders, urging reversal for amici curiae Ohio Association of Criminal Defense Lawyers and Cuyahoga County Public Defender.

Davis, Polk & Wardwell, L.L.P., Sharon Katz, Sarah E. Malkerson, Sagar K. Ravi, and Edward Sherwin, urging reversal for amicus curiae The Innocence Network.

_____